IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FILED
U.S.
2010 JAN 14 A 11: 56
CLERK'S OFFICE
AT BALTIMORE
BY_____DEPUTY

JEFFREY L. JOHNSON,                              *

   Plaintiff,                              *

     v.                              *

UNITED STATES OF AMERICA,              *

   Defendant/Third-Party Plaintiff,        *   Civil Action No.: L-06-350

     v.                              *

PHILLIP WRIGHT,                                  *

   Third-Party Defendant.                *

          ******

## MEMORANDUM

  Plaintiff, Jeffrey L. Johnson ("Johnson") initiated this case by seeking a declaratory judgment against the Internal Revenue Service.[1] Johnson, the former Director of Finance at a now-defunct corporation, ISSI,[2] sought a judgment declaring that he is not personally responsible for so-called "trust fund taxes" that ISSI failed to remit to the Government.

  The Internal Revenue Code requires employers to withhold federal income, social security, and medicare taxes from their employees' wages and remit them to the United States. An officer or employee of the corporation is personally liable for unpaid payroll taxes "if (1) he is a 'responsible person' under a duty to collect, account for, and pay over trust fund taxes, and (2) he willfully fails to discharge his duties as a responsible person." Turpin v. U.S., 970 F.2d

---

[1] The Internal Revenue Service ("IRS") was the original defendant.  This Court granted the IRS's motion to substitute the United States of America as the proper defendant on May 1, 2007.
[2] Information Systems Solutions International, Inc.

1344, 1347 (4th Cir. 1992).   In his amended complaint, Johnson contends that he was not a responsible party and that failure to pay was not willful as to him.

The United States filed a counterclaim against Johnson and a third-party complaint against Phillip Wright, the former President, CEO, and majority stockholder of ISSI.  The Government sought a personal judgment against both men, jointly and severally, in the amount of the unpaid taxes.  Pursuant to a scheduling order, the parties conducted discovery.  Johnson represented himself, pro se, and Wright was represented by counsel until November 2008.  Following discovery, the Government moved for summary judgment against both Wright and Johnson.   In an earlier Memorandum and Order, the Court granted summary judgment against Wright and issued a judgment against him in the amount of the unpaid taxes, $1,077,366.37, plus interest and other statutory additions accruing from October 15, 2007.  Papers No. 65 and 66.

The Government filed its motion for summary judgment against Johnson on March 27, 2009.  Because Johnson was representing himself, the Court, on March 30, 2009, wrote Johnson a letter advising him of his obligation to respond to the Government's motion, setting a deadline of April 16, 2009, for Johnson's opposition and warning that failure to respond would result in a judgment by default.  Johnson failed to file an opposition.  On June 1, 2009, Johnson submitted a letter notifying the Court that he intended to file a cross-motion for summary judgment and requesting an additional 30 days to "properly respond the Defendant's characterization of events."  Paper No. 73.  Despite this representation and the passage of seven months, Johnson has filed neither an opposition nor a cross-motion, nor any other papers with the Court.

The Government's motion for summary judgment remains unopposed.  Although Johnson is pro se, his failure to respond cannot be excused as inadvertent.  As the plaintiff, he initiated the instant litigation.  He acknowledged receipt of the Government's motion for

summary judgment, and he was warned that the failure to respond would result in a grant of summary judgment against him or the dismissal of his case. As is evidenced by his amended complaint and his participation in discovery, Johnson is a highly educated individual who is fully capable of understanding the issues and representing himself.

The United States Court of Appeals for the Fourth Circuit has stated that, "[a]lthough the failure of a party to respond to a summary judgment motion may leave uncontroverted those facts established by the motion, the moving party must still show that the uncontroverted facts entitle the party to 'a judgment as a matter of law.' The failure to respond to the motion does not automatically accomplish this." Custer v. Pan American Life Ins. Co., 12 F.3d 410, 416 (4th Cir. 1993). Accordingly, the Court has examined the record, which includes a number of ISSI's financial documents and extensive excerpts from the depositions of Johnson, Wright, James Finneran, Vice President and minority stockholder of ISSI,[3] and Monique Mangrum, accounting supervisor. The Court is satisfied that the Government has established as a matter of law that Johnson is liable for the unpaid payroll taxes. The Government's motion for summary judgment is, therefore, GRANTED.

## I.    FACTUAL BACKGROUND

### A.    Johnson's Employment and Responsibilities With ISSI

Prior to its dissolution, ISSI was a government contracting and consulting firm specializing in data review and computer systems development. Johnson began working for the company in 1997 as Director of Finance. Prior to working for ISSI, Johnson worked as an

---

[3] The Government did not bring suit against Finneran for the unpaid payroll taxes.

accountant for Rosen Sapperstein & Friedlander for approximately eight years.[4]  During that time, ISSI was one of Johnson's clients.

As Director of Finance, Johnson had extensive authority over ISSI's financial affairs.[5] Specifically, Johnson was directly involved in: (1) interviewing, hiring, and managing finance employees; (2) signing checks drawn on ISSI's operating and payroll accounts; (3) supervising payroll and tax withholding; (4) advising Wright which bills to pay; (5) preparing and filing ISSI's quarterly form 941 tax returns and reporting federal income, social security, and medicare taxes withheld from employee wages; (6) maintaining financial records, general ledgers, and bank accounts and checkbooks, preparing balance sheets, income statements, financial projections, and budgets, and tracking cash flow; (7) working with customers, suppliers, service providers, lenders, and lessors as needed; and (8) overseeing the company's conversion to the Y2K compliant accounting software that ultimately incorrectly tracked the company's accounts payable and receivable.

### B.    ISSI's Failure to Remit Federal Taxes

ISSI experienced cash flow problems throughout 1998 and 1999.[6]  During the fourth quarter of 1998 and first three quarters of 1999, the company failed to remit the federal income, social security, and medicare taxes it was required to withhold from employee paychecks.  In his deposition, Johnson testified that he was aware of ISSI's federal withholding tax liabilities as they accrued, and that he knew the company had failed to pay the taxes.  Johnson, however, continued to sign checks to pay creditors, including employees, other than the United States.

---

[4] Johnson has a Bachelor of Science degree in finance from Salisbury State College.  He took classes in accounting while in college and received in-house income tax training while at Rosen Sapperstein & Friedlander.
[5] The finance department—which Johnson oversaw—was responsible for handling accounts, financial reporting, payroll, and tax matters.
[6] These problems ultimately led to the company's shutdown in late 2000.

4

C.    **The Trust Fund Recovery Penalty Assessments Against Johnson**

Given ISSI's failure to pay certain federal taxes, the Internal Revenue Service ("IRS")

applied the trust fund penalty, found in 26 U.S.C. § 6672, and assessed a penalty of

$1,005,906.01—including accrued interest as of September 10, 2007—against Johnson.[7] The

costs associated with each tax period are as follows:

| Tax Period | Assessment Date | Assessment | Balance Due (as of 9/10/07) |
|---|---|---|---|
| Fourth Quarter, 1998 | 5/19/2003 | $99,992.00 | $106,978.75 |
| First Quarter, 1999 | 5/19/2003 | $540,857.00 | $704,238.98 |
| Second Quarter, 1999 | 5/19/2003 | $85,524.00 | $111,359.07 |
| Third Quarter, 1999 | 5/19/2003 | $63,997.00 | $83,329.21 |

## II.   STANDARD OF REVIEW

The Court may grant summary judgment when "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986);

see also Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) (recognizing that

trial judges have "an affirmative obligation" to prevent factually unsupported claims and

defenses from proceeding to trial). Nevertheless, in determining whether there is a genuine

issue of material fact, the Court views the facts, and all reasonable inferences to be drawn from

them, in the light most favorable to the non-moving party. Pulliam Inv. Co. v. Cameo

Properties, 810 F.2d 1282, 1286 (4th Cir. 1987).

---

[7] The Government had provided certified records of the trust fund recovery penalty assessments against and balances due from Johnson. These records are self-authenticating and require no extrinsic evidentiary support. See Fed. R. Ev. 902.

### III.   ANALYSIS

The internal revenue code requires employers to withhold federal income, social security, and medicare taxes from their employees' wages. See 26 U.S.C. §§ 3102(a), 3402(a), 7501. Because the employer holds these taxes as "special funds in trust for the United States," they are commonly referred to as "trust fund taxes." See Plett v. U.S., 185 F.3d 216, 218 (4th Cir. 1999). While employers remain liable for failing to remit trust fund taxes, the Internal Revenue Code also imposes personal liability—in an amount equal to the unpaid taxes—upon officers or employees who (1) are responsible for collecting, accounting for, and remitting payroll taxes, and (2) willfully fail to do so. Id. (citing 26 U.S.C. §§ 6672(a), 6671(b)).

Further, it is "well established in tax law that an assessment is entitled to a legal presumption of correctness." U.S. v. Fior D'Italia, Inc., 536 U.S. 238, 242 (2002). In other words, in the context of § 6672, an IRS determination of tax liability is presumptively correct and the burden is placed on the taxpayer to establish that the IRS's determination was erroneous. See U.S. v. Pomponio, 635 F.2d 293, 296 (4th Cir. 1980). In order to show that an IRS determination was erroneous, a taxpayer must demonstrate either (1) that he was not a responsible person, or (2) that his failure to pay the taxes was not willful. Id.

### A.   Johnson Was a Responsible Person

The crucial inquiry in determining responsibility under § 6672 is whether an individual "had the effective power to pay taxes – that is, whether he had the actual authority or ability . . . to pay taxes owed." Plett, 185 F.3d at 219. In providing guidance on this issue, the Fourth Circuit has delineated a number of factors that are "indicia of the requisite authority." These factors include whether the employee: (1) served as an officer of the company, or as a member of its board of directors; (2) controlled the company's payroll; (3) determined which creditors to

pay and when to pay them; (4) participated in the day-to-day management of the corporation; (5) possessed the power to write checks, and (6) had the ability to hire and fire employees. See Hagen v. U.S., 485 F. Supp. 2d 622, 628 (D. Md. 2007) (quoting Plett, 185 F.3d at 219). While the test contemplates that the responsible person will have significant control over the corporation's finances, exclusive control is unnecessary. Id.

Applying the above factors to the present case, the Government has made a satisfactory case that Johnson was a responsible party. Johnson served as ISSI's Director of Finance. As Director, all of ISSI's financial affairs were within his purview. He was responsible for understanding and maintaining ISSI's financial records including the general ledger, bank accounts, balance sheets, income statements, financial projections, budgets, and cash flow statements. He participated in interviewing and hiring finance department employees, interacted with outside accountants, vendors, and customers, and advised Wright on a regular basis which bills to pay and when. Furthermore, Johnson had the ability to request and sign checks drawn on the company's accounts. Although at least one account required two signatures for checks larger than $2,000.00, Johnson had the ability to transfer money into the payroll account and write checks of any amount drawn on that account. Finally, Johnson personally prepared the quarterly form 941 tax returns reporting ISSI's payroll tax liabilities. In short, Johnson played a substantial role in managing and maintaining ISSI's overall financial affairs and was thus a responsible party under § 6672.[8]

---

[8] It should be noted that Johnson's assertion that he could not independently make major decisions on the company's behalf does not relieve him of responsible person status. More than one individual can be a responsible person under § 6672, as "exclusive control is not necessary" to the responsible person analysis. Hagen v. U.S., 485 F. Supp. 2d 622, 628 (D. Md. 2007) (citing Greenberg v. U.S., 46 F.3d 239, 243 (3d Cir. 1994)). Indeed, "§ 6672 applies to all responsible persons, and not *just the most responsible* person." Id.

**B.      Johnson Willfully Failed to Remit ISSI's Taxes**

When considering this requirement under § 6672, the Fourth Circuit has held that "the failure to pay trust fund taxes cannot be willful unless there is either 'knowledge of nonpayment or reckless disregard for whether the payments were being made.'" Hagen, 485 F. Supp. 2d at 630 (quoting Turpin v. U.S., 970 F.2d 1344, 1347 (4th Cir. 1992)). One principal way of demonstrating willfulness is to "show that the responsible person made a voluntary, conscious and intentional decision to prefer other creditors over the Government." Id. (internal citation and quotation marks omitted); see also Johnson v. U.S., 203 F. Supp. 2d 416, 423 (D. Md. 2002) ("The 'intentional preference of other creditors' over the United States is 'sufficient to establish the element of willfulness' under section 6672." (quoting Turpin, 970 F.2d at 1347)). Even if an individual bears no evil motive—*i.e.* an intent to defraud the IRS—willfulness is nonetheless established by the intentional act of paying other creditors before the United States. See Bell v. U.S., 355 F.3d 387, 393 (6th Cir. 2004).

Johnson admitted on deposition that he knew ISSI's payroll taxes were due and owing. Johnson had been an accountant and he appreciated that payroll taxes are a legal obligation of a corporation.[9] He stated that he understood at the time that if a company did not pay the quarterly payroll taxes, "there would be penalties and interest" assessed by the IRS. Ex. 9, p. 167. Johnson testified that he sat down with Wright and explained that the payroll taxes were due and must be paid. Johnson also knew that ISSI was paying other creditors in preference to its payroll tax obligations. Despite this knowledge, he continued to sign checks to other creditors. He

---

[9] Wright testified on deposition that Johnson was hired in part because of his experience and understanding of payroll taxes. Ex. 10, p. 182–83.

signed these checks despite knowing that ISSI was having cash flow problems. Thus, he appreciated the risk that the payroll taxes might never be paid.

Johnson cannot be relieved of responsibility for the tax deficiencies by claiming, as he does in his amended complaint, that he followed Wright's instructions not to pay the trust fund taxes out of fear of being fired. Following the orders of a superior to pay expenses other than payroll taxes is not a defense under § 6672. See Brounstein v. U.S., 979 F.2d 952, 955 (3d Cir. 1992) ("Instructions from a superior not to pay taxes do not, however, take a person otherwise responsible under section 6672(a) out of that category."); Gephart v. U.S., 818 F.2d 469, 475 (6th Cir. 1987) ("[A] responsible person follows the directions of a supervisor not to pay withholding taxes to the government at his peril."); see also Plett, 185 F.3d at 221–22 (rejecting responsible person's defense that he did "as he was told").

Even construing the facts in the light most favorable to him, Johnson still had the actual ability to remit the payroll taxes to the Government but intentionally allowed other creditors to be paid instead. Thus, under § 6672, Johnson is personally liable for the company's failure to pay those taxes.[10]

## IV.   CONCLUSION

For the foregoing reasons, the Court will, by separate order: (i) GRANT the United States' Motion for Summary Judgment, (ii) ORDER that Johnson pay the United States

---

[10] The Court has confined its analysis to those facts admitted by Johnson. These facts establish that Johnson was a responsible person within the scope of § 6627 and that he willfully failed to discharge his duties as a responsible person. Other parts of the record, which Johnson has chosen not to rebut, suggest that Johnson's actions were more deliberate than he admits. For example, in its motion, the Government avers that ISSI's failure to pay the payroll taxes was part of its strategy to manage cash flow. Paper No. 70, p. 14 (citing Ex. 11, p. 132–34 (stating that Johnson and Wright failed "to make federal payroll tax payments [as] a cash flow management strategy because they believed that they could get penalties and interest abated for late payments")). The Government also points out that significant evidence exists to contradict Johnson's statements that he did not have unilateral authority to approve payments. Paper No. 70, p. 8 (citing Ex. 10, p. 120–23, 166–67, 221–24; Ex. 11, p. 70–73, 79–82, 114–17). By failing to respond to the Government's motion for summary judgment, Johnson has failed to rebut or explain these assertions.

$1,005,906.01, plus interest and other statutory additions accruing from September 10, 2007, and

(iii) DIRECT the Clerk of the Court to close this case.

Dated this 12th day of January, 2010.

Benson Everett Legg
United States District Judge